McCONNELL, Circuit Judge,
dissenting.
This case involves the difficult question of whether a search warrant containing some valid and some invalid parts should be severed, so that evidence seized under the valid parts is permissible. It is undisputed that at least one clause of the warrant is unconstitutionally overbroad. Although the majority acknowledges that a substantial portion of the warrant is valid, *649 it concludes that the invalid sections of the warrant are so “broad and invasive” as to “contaminate the whole warrant,” making severance inappropriate in this case. Because I believe the majority’s conclusion follows from a misreading of the warrant and adds confusion to our severability doctrine, I must respectfully dissent.
I.
In United States v. Sells, 468 F.3d 1148, 1155 (10th Cir.2006), we recognized that “every federal court to consider the issue has adopted the doctrine of severance, whereby valid portions of a warrant are severed from the invalid portions and only materials seized under the authority of the valid portions, or lawfully seized while executing the valid portions, are admissible.” When a warrant contains both valid and invalid parts, severance is justified because “[t]he cost of suppressing all the evidence seized, including that seized pursuant to the valid portions of the warrant, is so great that the lesser benefits accruing to the interests served by the Fourth Amendment cannot justify complete suppression.” Sells, 463 F.3d at 1155 n. 3 (quoting United States v. Christine, 687 F.2d 749, 758 (3d Cir.1982)); see also 2 William LaFave, Search and Seizure, § 4.6(f) (4th ed.2004) (“[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in to merely because the affiant and magistrate erred in seeking and permitting a search for other items as well.”).
Of course, severance is not always appropriate. But we have suggested that severance is usually inapplicable only under certain limited circumstances. First, severance is obviously unjustified when even after dividing a warrant into separate clauses or categories, no part of the warrant satisfies the probable cause and particularity requirements of the Fourth Amendment. In such a case, there is nothing for severance to save. See Sells, 463 F.3d at 1156 (citing State v. Maddox, 116 Wash.App. 796, 67 P.3d 1135, 1141 (2003) , aff'd 152 Wash.2d 499, 98 P.3d 1199 (2004) ). Likewise, severance is inappropriate in a case where the valid portions of a warrant cannot be linguistically or logically distinguished from the invalid portions of the warrant. Sells, 463 F.3d at 1158; Christine, 687 F.2d at 754. Third, several courts have also held that severance is inappropriate when it is shown that “the valid parts of the warrant were included by the Government as a pretext to support an otherwise unlawful search and seizure.” United States v. Freeman, 685 F.2d 942, 952 (5th Cir.1982) (internal quotation and citation omitted); see also Sells, 463 F.3d at 1161 n. 7 (reserving question of whether such a showing would make severance inapplicable). No one has alleged that here. Finally, like “every [other] court to adopt the severance doctrine,” we have limited its application to prohibit severance from saving a warrant whose valid portions are a relatively insignificant portion of the whole. Sells, 463 F.3d at 1158. Only this final limitation is at issue in this case.
We have not always been consistent when describing the contours of this limitation. See Sells, 463 F.3d at 1158-59. In our earliest cases discussing and adopting severability, we did not address it at all. See United States v. Leary, 846 F.2d 592, 606 n. 25 (10th Cir.1988); United States v. Brown, 984 F.2d 1074, 1078 (1993) [1] In United States v. Naugle, 997 F.2d 819 *650 (10th Cir.1993), we suggested that “[t]o make the severability doctrine applicable the valid portions of the warrant must ... make up the greater part of the warrant.” See id. at 822 (emphasis added). We appeared to clarify this statement in United States v. Soussi, 29 F.3d 565, 568 n. 3 (10th Cir.1994), explaining that severance is appropriate “only when at least a substantial part of the warrant is valid.” In Sells, we noted that “[o]ther circuits, seem, for the most part, to follow the Soussi articulation of the severability test.” Sells, 463 F.3d at 1159. The majority of our fellow circuits simply ask whether the valid portions of a warrant constitute an “insignificant or tangential part of the warrant.” Id. at 1160-61; see also Op. 639 n. 9 (describing cases declining to sever, all of which follow this formulation). Although we acknowledged that “there may be some nuanced differences among these various articulations,” we nevertheless followed Naugle’s articulation and asked whether the valid parts of Mr. Sells’s warrant constituted the “greater part of the warrant.” Sells, 463 F.3d at 1159-60.
As this case demonstrates, the difference between these various formulations is not merely semantic. Naugle’s inquiry into whether the valid or invalid parts of the warrant constitute “the greater part of the warrant” suggests a comparative analysis under which the proper and improper components of the warrant are added up, weighed according to their “relative scope and invasiveness,” id. at 1160, and then cast against each other to determine which preponderates. In contrast, the formulation suggested by Soussi and followed by most other circuits dictates a focus on the valid portions of the warrant. So long as these are substantial, particularized, and distinguishable from the invalid portions, severance generally would be appropriate, even if the invalid parts of the warrant were greater in number or significance.
Were we to follow our articulation of the severability test in Soussi, it is clear that severance would be appropriate in this case. The majority cannot seriously contest that the valid portions of Mr. Cassady’s warrant — constituting, even under its analysis, almost the entire set of items described in the first paragraph — represent substantial parts of the warrant. In the terms employed by our sister circuits, the valid portions of the warrant are indisputably not “insignificant” or “tangential.” See, e.g., United States v. Kow, 58 F.3d 423, 428 (9th Cir.1995); United States v. George, 975 F.2d 72, 80 (2d Cir.1992); United States v. Freeman, 685 F.2d 942, 952 (5th Cir.1982). The majority, however, employs the Naugle test, and concludes that severance is inappropriate because it finds that the valid components of the warrant do not constitute the “greater part of the warrant.”
In the following sections, I explain why even under our Naugle formulation, the valid parts of the warrant in this case constitute “the greater part of the warrant,” such that severance is appropriate. In Part III, however, I write separately to suggest that the Naugle articulation of the severability test disserves the purpose of severability, and suggest that we should adopt the formulation of the test stated in Soussi and applied by our sister circuits.
II.
A.
Under our precedent, the first step in determining whether severability doctrine is applicable is “to divide the warrant into individual phrases, clauses, paragraphs, or categories of items.” Sells, 463 F.3d at 1155. The manner in which a warrant is divided will necessarily inform the calculation of whether its valid parts constitute *651 the “greater part of the warrant.” Although we have cautioned that a strictly numerical comparison of the valid versus invalid portions of a warrant should never be dispositive, we have nevertheless maintained that “the number of valid versus invalid provisions is one element in the analysis of which portion makes up the greater part of the warrant.” Op. at 640 (quoting Sells, 463 F.3d at 1155). As a practical matter, the more valid parts of a warrant that are identified during the partition process, the more likely it is that they will constitute “the greater part of the warrant.”
While the precise level of generality at which warrant components are grouped into categories will vary, often depending on the scope of the items included in the warrant, the touchstone of the partition process is the division of a warrant into comparable pieces in terms of the structure of the warrant itself, typically organized around items or thematically cohesive groups of items (or locations) to be searched.
Thus, in Sells, we divided a warrant authorizing a search for “[a]ny .223 caliber Firearm or rifle, .223 caliber ammunition, footwear, clothing, any other related fruits, instrumentalities and evidence of the crime” into five categories: (1) any .223 caliber Firearm or rifle, (2) .223 caliber ammunition, (3) footwear, (4) clothing, and (5) any other related fruits, instrumentalities and evidence of the crime. Id. at 1156. Likewise, in Naugle, 997 F.2d at 820-21, while the more expansive set of items included in the search warrant necessitated larger categories, we again divided the warrant into four relatively proportionate groupings:
(1) letters, papers, documents, checks or envelopes inscribed or printed upon with the Utah County Constable or Utah County Constable Star; (2) letters, papers, documents, checks or envelopes inscribed or printed upon any such insignia which gives the appearance or represents a government agency, or anything else that in its nature could be used to imply an affiliation with such an agency; (3) any surveillance equipment including electronic listening and recording devices, cameras, binoculars, radios, telephone hardware and records; (4) business records, personnel files, payroll records, computer, both hard and software, contracts, tapes or video equipment. Id. at 820.[2]
In comparison, in this case, the majority divides the warrant into three wholly disproportionate sections. Although the warrant authorizes the search of substantially more items than in Sells or Naugle, the majority divides the warrant into only three sections. But more important than the paucity of categories is the disproportionality of their content. The three categories could not be more different in size or scope. Into the first category, the majority lumps the vast majority of items to be searched for under the warrant, including marijuana, the materials commonly used to grow it, the financial instruments commonly used to obtain drugs and hide *652 proceeds, the scales commonly used to weigh drugs, and the physical and computer records which commonly detail the purchase and sale of drugs. Every one of the items that the majority ultimately assumes to be validly identified has been grouped into one single category, with predictable results for the majority’s later inquiry as to whether the greater number of the categories in the warrant is valid or invalid. See Op. 639-AtO. The majority points to no other case applying severability doctrine in which so extensive a set of items to be searched are consolidated into one category for purposes of severability analysis.
While the majority creates its first category out of the first 162 words of the warrant’s authorization to search, it forms the second category out of the next seven: “And all other evidence of criminal activity.” The majority then combines the next two paragraphs into a final category, despite the fact that — as I will later explain — the two paragraphs serve entirely different purposes in the scheme of the warrant.
I fully recognize that the process of dividing a warrant has an element of subjectivity. Reasonable minds will frequently disagree on the best way to partition the various phrases that make up a warrant, and courts should have latitude to divide a warrant as best fits the facts of a given case. This a good reason to adopt a different methodology, as I discuss in Part III. But if we are to apply the comparative approach of Nangle, we need some way to divide the warrant into valid and invalid parts and to quantify which is “the greater part.” Our precedents employing this approach show that warrants are to be partitioned in a commonsensical and consistent manner. While courts are free to divide warrants into “individual phrases, clauses, paragraphs, or categories of items,” Sells, 463 F.3d at 1155, it is not commonsensical to divide a warrant into substantially disproportionate segments. Nor is it appropriate to partition a warrant primarily with an eye towards different components’ relative propriety or impropriety. Our precedents make clear that the proper place to “evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant” is after the warrant is partitioned into different pieces. See Sells, 463 F.3d at 1160. To lump all valid clauses into one category, and to divide invalid clauses into more than one, is to doom all warrants to nonseverability.
On analogy to our analysis of the warrants in Sells and Naugle, I would divide the warrant in this case into at least eight groups of items for which a search is authorized: 1) narcotics; 2) contraband related to the production of narcotics; 3) currency or other financial instruments used to obtain or conceal narcotics; 4) paper records relating to the obtainment or distribution of narcotics; 5) scales or measuring devices used to distribute narcotics; 6) computer records relating to obtaining or distributing narcotics; 7) all other evidence of criminal activity; and 8) articles of personal property tending to establish the identity of the person in control of the place to be searched. Only one of these categories is improper: the clause authorizing a search for “all other evidence of criminal activity.”[3] When the warrant *653 is more sensibly and consistently divided, it is clear that the legitimate parts of the warrant outnumber and outweigh the illegitimate.
B.
Even aside from the majority’s seemingly arbitrary division of the warrant into three disproportionate parts, I believe its interpretation of the “third section” of the warrant, see Op. 638-39 n. 8, is almost certainly mistaken. The third section, as identified by the majority, authorizes a search for:
articles of personal property tending to establish the identity of the person or persons in control or possession of the place or vehicle, including but not limited to, utility company receipts, rent receipts, cancelled mail envelopes, vehicle registration, credit card receipts, repair bills, photographs, keys and articles of clothing, believed to situated at the place, in the vehicle or on the person known or described as:
Unincorporated Kit Carson County, State of Colorado; upon one or more of the grounds set forth in the Colorado Revised Statutes and the Colorado Rules of Criminal Procedure, namely; that this property is stolen or embezzled; or is designed or intended for use as a means of committing a criminal offense; or is or has been used as a means of committing a criminal offense; or the possession of which is illegal; or would be material evidence in a subsequent criminal prosecution in this state or another state; or the seizure of which is expressly required,, authorized or permitted by any statute of this state. Ex. A. ,
The majority understands the second paragraph of this section to expand the scope of the search authorized by the warrant, so as to permit a general search for any of the kinds of items listed in the second paragraph. See Op. 635. But the better understanding of the last paragraph is that it simply identifies the grounds upon which a search is authorized under Colorado law, rather than being an authorization to search for additional items. Although the warrant is admittedly “ungrammatical and difficult to read in many respects,” Op. 635, the warrant’s text— read from start to finish — confirms this reading of the paragraph’s purpose. The warrant reads: “The affiant; Willis E. Boden, has filed an Affidavit for a Search Warrant ... for the following described property ... [the list of items to be searched for] ... upon one or more of the grounds set forth in the Colorado Revised Statutes and the Colorado Rules of Criminal Procedure, namely ... [the list of grounds upon which a search may be legal *654 ly authorized under Colorado law]”. Ex. A (emphasis added).
This interpretation of the final paragraph is further supported by the fact that the six “grounds” articulated in the warrant precisely match the first six “Grounds for Issuance” for a search warrant under Colorado law. See Colo.Rev.Stat. 16 — 3—301; Colo. R.Crim. P. 41(b)(l-6) (providing that a search warrant' may be issued under this Rule to search for any property on the basis of the exact six grounds listed in Mr. Cassady’s warrant). Consequently, it is clear that the final paragraph does nothing to expand the scope of the search of the warrant, but simply identifies the legal grounds upon which a search may be authorized.[4]
As for the remainder of this part of the warrant, entitling the police officers to search for “articles of personal property tending to establish the identity of the person or persons in control or possession of [Mr. Cassady’s] place,” we have approved similar language on numerous occasions. See United States v. Burns, 624 F.2d 95, 101 (10th Cir.1980) (approving particularity of a search warrant designed to uncover “personal property tending to éstablish the identity of persons in control of contraband,” and “related paraphernalia consisting in part and including, but not limited to utility company receipts, rent receipts, cancelled mail envelopes, photographs and keys.”); United States v. Baker, 166 F.3d 348 (Table Opinion), 1998 WL 808392 at *4 (10th Cir. Nov.20, 1998) (finding the particularity requirement satisfied where the warrant authorized seizure of “articles of personal property tending to establish the identity of the person or persons in control or possession of the place or vehicle, including, but not limited to, utility company receipts, rent receipts, canceled mail envelopes, vehicle registration, credit card receipts, repair bills, photographs, keys, and articles of clothingf.]”) Indeed, it is well-established that “[a] search warrant may be used, not only to gather evidence of a criminal activity, but also to gather evidence of who controlled the premises suspected of connection with criminal acts.” United States v. McLaughlin, 851 F.2d 283, 286 (9th Cir.1988).
Properly understood, therefore, the majority’s “third section” of the warrant does not offend the Fourth Amendment.
C.
The only overbroad language in Mr. Cassady’s warrant is the clause purporting to authorize a search for “all other evidence of criminal activity.” It is undisputed that this clause does not satisfy the particularity requirement of the Fourth Amendment. But as it is the only portion of a lengthy and mostly valid warrant that fails to pass muster, I would find that the valid parts of Mr. Cassady’s warrant constitute “the greater part of the warrant.”
To allow the presence of this admittedly overbroad phrase to “contaminate the whole warrant,” Op. 640 would be to create a per se rule that the presence of broad catchall language within an otherwise valid warrant always invalidates the warrant in full, no matter how detailed and numerous the valid components of the warrant may be. Indeed, the majority admits as much. See Op. 640 n. 10 (suggesting that the *655 overbroad phrase in Mr. Cassady’s warrant would make up the greater part of the warrant regardless of the character and extent of a warrant’s valid components). This would be contrary both to the historical application and purpose of severability doctrine.
Numerous courts and commentators have recognized the leading case on sever-ability doctrine to be Aday v. Superior Court of Alameda Cty., 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47 (1961). See, e.g., United States v. Riggs, 690 F.2d 298, 300-01 (1st Cir.1982); Freeman, 685 F.2d at 952; Christine, 687 F.2d at 754 n. 4; 2 LaFave, Search and Seizure at § 4.6(f). In Aday, a police officer obtained a warrant to search a publisher accused of conspiring to publish, print, and sell lewd books. Although the warrant authorized a search for various items in a manner comporting with Fourth Amendment requirements, it also authorized a search for “ ‘any and all other records and paraphernalia connected with’ the business of the corporate petitioners.” Aday, 13 Cal.Rptr. 415, 362 P.2d at 50 (quoting warrant). Although the court concluded that this and other overbroad categories “were so sweeping as to include virtually.all personal business property on the premises and placed no meaningful restriction on the things to be seized,” making it “similar to the general warrant permitting unlimited search, which has long been condemned,” it nevertheless still found the warrant to be severable. Id. 13 Cal.Rptr. 415, 362 P.2d at 51-52 (emphasis added). The court explicitly found that the warrants’ defects did not turn the warrant into one “essentially general in character but as to minor items,” despite the fact that part of the warrant provided effectively limitless authorization to search. Id. 13 Cal.Rptr. 415, 362 P.2d at 52.
We have ourselves previously approved of severance in a case where the bulk 'of items to be searched were described with particularity, but the warrant authorized a search for “[a]ny other item which the Officers determine or have reasonable belief is stolen while executing search warrant.” United States v. Brown, 984 F.2d 1074 (10th Cir.1993). In a case we cited with approval in Brown, the Eighth Circuit concluded that a substantially similar phrase “provide[d] no protection against subjecting a person’s lawfully held property to a general search and seizure,” finding that “[sjuch a general authorization allows officers to search indiscriminately throughout one’s house and to seize anything they please.” United States v. LeBron, 729 F.2d 533, 537 (8th Cir.1984). Yet despite the fact that the overbroad phrases in these warrants effectively authorized a general rummaging, severance was deemed appropriate in both cases.
Perhaps the closest case to this one is United States v. George, 975 F.2d 72 (2d Cir.1992). In that case, the warrant authorized a search for several items described with particularity, as well as for “any other evidence relating to the commission of a crime.” Id. at 74. Although the court recognized that this overbroad phrase “effectively granted the executing officers virtually unfettered discretion to seize anything they saw,” id. at 75 (quotation omitted), it found severance appropriate. In language equally applicable to our own case, the court concluded that “[w]e have before us on this appeal a warrant that is, in part, so broad as to be a general warrant and which, as to that part, no reasonable police officer could suppose otherwise. Yet, we think the warrant in this particular case may- be saved ... under the doctrine of severance.” Id. at 74. The majority’s decision thus creates a circuit court conflict where none had existed before.[5] :
*656 The majority attempts to distinguish some of these cases on the ground that the overbroad language in those cases is not precisely the same as the overbroad language in Mr. Cassady’s warrant. But this misses the mark. The crucial point is that other courts have often concluded that severance is appropriate even when the over-broad portion of the warrant authorizes a general search and seizure-the precise scenario before us here. And the overbroad language in George is virtually identical to that in Mr. Cassady’s warrant.
The majority’s citation to United States v. Foster, 100 F.3d 846, 851-52 (10th Cir.1996), and United States v. Medlin, 842 F.2d 1194, 1199-1200 (10th Cir.1988) (Medlin I) is inapposite. In those cases, we ordered the general suppression of evidence when the officers executing the warrant exhibited “flagrant disregard” for its terms, “grossly exceeding] the scope” of the search approved by the neutral magistrate. Medlin, 842 F.2d at 1199; see also Foster, 100 F.3d at 850-51 (noting that the officer admitted that it was “standard practice” in his county when executing search warrant to “[take] anything of value” and deliberately disregard the warrant “in an effort to uncover evidence of additional wrongdoing”). Such cases raise the inference that the warrant obtained is merely a pretext for a general search—a textbook case for when severance is inappropriate. See infra at 2. By contrast, total suppression is unnecessary where, as here, the police search pursuant to a warrant duly submitted to a magistrate in good faith.
The offensive phrase in Mr. Cassady’s warrant is no more disagreeable than the general authorization to search in Aday or George, or the general rummaging authorized by the warrants in Brown and LeBron. As in those cases, I would conclude that severance best promotes the policies of the Fourth Amendment, by excluding any evidence obtained pursuant to constitutionally infirm portions of the warrant while at the same time avoiding the substantial social costs[5]
[6] that would follow from excluding evidence of criminal activity obtained on the basis of a warrant’s valid components.
III.
It is not necessary to reconsider our adherence to Naugle’s “greater part of the warrant” language in order to conclude that severance is appropriate here, but this case illustrates the shortcomings of our existing approach. In addition to being difficult to apply, Naugle’s “greater part of the warrant” test departs unnecessarily, and arguably accidentally, from the test employed in the vast majority of other jurisdictions. Moreover, the purposes of severability doctrine are better served by the test employed by our sibling circuits.
First, the subjectivity inherent in applying the “greater part of the warrant” test leads to unpredictable results. There are few guidelines for courts to follow when *657 comparing the valid and invalid components of a warrant. Does an overbroad search for “all evidence of criminal activity” make up the greater part of a warrant when compared to two valid categories of items? Five? Ten? Does it matter for purposes of this analysis whether those categories are composed of single items, like the .223 caliber ammunition in Sells, or of multiple items as in Naugle? As this case shows, the manner in which judges chop up a warrant will often have outcome-determinative effects.
If there were a sound reason for making the outcome of these cases turn on whether or not the valid parts of the warrant constituted its “greater part,” then our test might be defensible, despite the difficulty of its application. But we have differed from our fellow circuits with little analysis or explanation. Indeed, it is unclear whether this court actually intended to diverge from the rule followed by most other circuits. In Naugle, we cited United States v. George, 975 F.2d 72, 79-80 (2d Cir.1992), for the proposition that “[t]o make the severability doctrine applicable the valid portions of the warrant must ... make up the greater part of the warrant.” Naugle, 997 F.2d at 822. But the words “greater part of the warrant” appear nowhere in George. Instead, George follows the majority rule that we seem to have eschewed, explaining that severance “is not available ... where the sufficiently particularized portions make up only an insignificant or tangential part of the warrant.” George, 975 F.2d at 79-80 (emphasis added). Thus, it is unclear that our departure from the framework followed by other jurisdictions was deliberate. Later, in Soussi we interpreted the limitation only to make severability inappropriate when the valid portions of the warrant were insubstantial. See Soussi, 29 F.3d at 568 n. 3.
Most importantly, the purposes of sever-ability doctrine are better served by following our Soussi articulation. When a warrant contains both valid and invalid parts, severance is the favored remedy because it best balances the competing interests at stake in these cases: deterring the government from searching pursuant to warrants which fail to satisfy the probable cause or particularity requirements of the Fourth Amendment and minimizing the social costs that would follow from the total suppression of validly seized evidence because of defects elsewhere in the warrant. When the valid parts of the warrant are distinguishable and not insignificant, these interests are better promoted by severing the warrant — even when they do not constitute “the greater part of the warrant.”
Severance in a case like this provides no greater incentive to the police to search in a manner inconsistent with the Fourth Amendment. Not one piece of evidence obtained only on the basis of the warrant’s authorization to search for “all evidence of criminal activity” may be used against Mr. Cassady. Including an overbroad clause thus cannot possibly benefit law enforcement. Moreover, officers will not be able to obtain qualified immunity for damages stemming from those aspects of the search conducted on the basis of components of the warrant that “no reasonable officer” could have believed to be lawful. See Op. 640 (quoting Groh v. Ramirez, 540 U.S. 551, 563, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)). This additional deterrent will dissuade any impulse to purposefully disregard the Fourth Amendment. As a result, “the same objectives of deterrence and integrity may be served in the same way and to the same degree by limiting suppression to the fruits of the warrant’s unconstitutional component,” irrespective of how broad and invasive the flawed components of a warrant may be. 2 LaFave, *658 Search and Seizure at § 4.6(f)- On the other hand, severance here avoids the social costs that would follow from excluding all of the valid evidence of criminal activity in this case, obtained on the basis of components of the warrant that the majority concedes are valid.
The purpose of making severance inapplicable in cases where the valid parts of the warrant make up an insignificant or tangential part of the warrant is to protect against intentional abuses of the warrant procedure. The limitation is designed to prevent law enforcement from obtaining essentially general warrants that happen to pass constitutional muster as to an occasional or minor item in the scope of the warrant. See Aday, 13 Cal.Rptr. 415, 362 P.2d at 52 (“We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated.”); United States v. Spilotro, 800 F.2d 959, 967 (9th Cir.1986) (finding that “keys” and “cash” sought under warrant were “only a relatively insignificant part of the sweeping search for evidence of any violation of ... thirteen statutes,” including a long laundry list of invalidly described items, and therefore were “not sufficiently separable from the rest of the warrant to allow severance”).
That inference is no longer warranted where, as here, substantial and distinguishable parts of the warrant describe items with particularity for which there is probable cause to justify a search or seizure. Accordingly, I would conclude that we should reconsider our adherence to Naugle.
In any event, because even under our existing precedent the valid portions of Mr. Cassady’s warrant constitute “the greater part of the warrant,” I would conclude that severance is appropriate. As a result, I would reverse the district court’s determination that qualified immunity was inappropriate, at least as to damages alleged to have resulted from aspects of the search following from the execution of the valid parts of Mr. Cassady’s warrant.

. Contrary to the majority's assertion, we did not address this exception in Brown. See Sells, 463 F.3d at 1150-51 (recognizing that this limitation was first made part of our doctrine in Naugle).

. The actual language of the warrant was as follows:
Letters, papers, documents, checks or envelopes inscribed or printed upon with the Utah County Constable, the Utah County Constable Star, or any such insignia which gives the appearance or represents a government agency, or anything else that in its nature could be used to imply an affiliation with such an agency, any surveillance equipment including electronic listening and recording devices, cameras, binoculars, radios, telephone hardware and records, business records, personnel files, payroll records, computer, both hard and software, contracts, tapes or video equipment, and any other articles used in the support or furtherance of. Naugle, 997 F.2d at 820 n. 1.

. We have approved searches for substantially similar items to those described in the first six categories in other drug-related cases: See, e.g., United States v. Sullivan, 919 F.2d 1403, 1424 and n. 31 (10th Cir.1990) (upholding warrant for drugs and list of contraband related to the production of drugs); United States v. Harris, 903 F.2d 770, 774-75 (10th Cir.1990) (upholding warrant against marijuana trafficker for "currency ... stocks, bonds or other securities ... gold silver and/or jewelry ... books, records, memoran *653 dum, notes, bank records, investment records, or any other documents evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or money obtained through illegal means”); United States v. Wicks, 995 F.2d 964, 967, 973-74 (10th Cir.1993) (upholding warrant for books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, sale and distribution of controlled substances); id. (upholding warrant for scales); United States v. Gunderman, 51 F.3d 287 (Table), 1995 WL 143143 at *3 and n. 2 (10th Cir.1995) (upholding warrant for ”[i]tems associated with the processing of controlled substances for transportation and distribution, such as ... measuring instruments and scales”); United States v. Welch, 291 Fed.Appx. 193, 203 (10th Cir.2008) (noting that a search for computer records connected to the manufacture of methamphetamine and would not be over-broad).
Likewise, we have frequently approved searches for the last category of items to be searched, encompassing articles of personal property that establish the identity of the person in control of the property. See infra at 12.

. The majority misreads my interpretation of the third section as affording the police permission to search for any evidence that matches any of the grounds for which searches are authorized under Colorado law. That is not the case. The warrant is limited to the items specified; this paragraph merely states the legal justification.

. The majority notes that in George, the Second Circuit "remanded for the district court to decide whether severance was appropriate” in that case. Op. 642 n. 16. Although it is technically true that the case was remanded because the district court had not ruled on severance in the first instance, the Second Circuit's language in George made clear that the inclusion of overbroad language authorizing a search for "other evidence relating to the commission of a crime” did not preclude the application of severance.

. The majority suggests that the social cost of suppressing all evidence seized in this particular case is diminished because the criminal case against Mr. Cassady has been dismissed. While the particular case before us is civil in nature, the majority would apply its rule in all cases — civil or criminal.